**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Edgefield Inn, LLC<br><br>Debtor. | Chapter 11<br>Case No. 14-01670-dd<br><br>**ORDER OF DISMISSAL** |

THIS MATTER is before the Court on the motion of creditor Scarlet Portfolio, LLC ("Scarlet Portfolio") to dismiss the bankruptcy case of Debtor Edgefield Inn, LLC with prejudice. After careful consideration of the applicable law, arguments of counsel, and evidence submitted, Scarlet Portfolio's request for dismissal is granted. Dismissal is without prejudice.

## I.    Facts and Procedural History

Debtor Edgefield Inn, LLC filed for protection under chapter 11 of the Bankruptcy Code on March 24, 2014. The Debtor is a small business, as defined by 11 U.S.C. § 101(51D), consisting of a 46-room inn in Edgefield, SC. All of the Debtor's real estate and personal property is encumbered by a loan from Scarlet Portfolio, scheduled at $853,120.59. The Debtor has two tax creditors, the Internal Revenue Service ("IRS") and Edgefield County, with scheduled claims of $25,000 and $20,521.82, respectively. Both claims are scheduled as secured. The Debtor values its property at $910,605.71; thus, all secured creditors are, or were at the time of the filing, oversecured. The Debtor scheduled an insider debt of $1,309,203.45 owed to Bettis Rainsford, Edgefield Inn's sole owner. The deadline for filing proofs of claim in this case was July 28, 2014.

Creditor Scarlet Portfolio filed its motion to dismiss on August 19, 2014. In its motion, Scarlet Portfolio argues that the case should be dismissed for cause because (1) the Debtor

1

cannot propose a plan with an impaired, consenting class and therefore cannot confirm a plan; and (2) the Debtor filed in bad faith in that it has no realistic ability to reorganize and it made improper pre-petition payments to insiders it is not seeking to collect. Scarlet Portfolio seeks dismissal with prejudice based on the Debtor's alleged bad faith.

The Debtor responded that the Debtor's business is healthy and can be rehabilitated.[1] It also asserted it will be able to propose a plan with an impaired, consenting class. The Debtor filed its first plan on October 2, shortly after responding to the motion to dismiss.[2]

The plan has five classes. Class 1 consists of the secured claims of Scarlet Portfolio and the IRS. The Scarlet Portfolio claim will be paid the value of its collateral up to the full amount of the claim with interest for 119 months with a balloon payment in the 120th month. The IRS claim will be paid in full with interest over five years. Class 2 consists of the unsecured claims of the IRS and Scarlet Portfolio, if any. They will be paid in full in equal monthly amounts over 300 months. Class 3 consists of "claims of maintenance companies who perform work on a regular basis for the Debtor." These claimants, who were neither scheduled nor filed proofs of claim, will "continue to be paid for services rendered as performed." Class 4 is the general unsecured class consisting of the Rainsford insider claim. Rainsford agrees to waive payment on his claim if the plan is confirmed and he retains ownership of the Debtor. Class 5 is the equity class. It will revest in the Debtor upon confirmation. The Edgefield County claim is not classified, but rather is treated under Article III of the plan as a priority tax claim. It will be paid in full with interest in monthly installments over a period of 54 months.

---

[1] The Debtor filed its first response to Scarlet Portfolio's motion to dismiss on September 18, one week after the deadline. The Debtor did not file a motion requesting permission to file its response out of time. The Debtor filed a supplemental response the day before the hearing. Again, the Debtor did not request permission to file the response out of time. Despite these procedural deficiencies, the Court will consider together the merits of the Debtor's arguments raised in both responses.

[2] The deadline for the Debtor to file a plan was September 22. The Debtor did timely file a plan, but the clerk's office issued a deficiency notice concerning a docketing issue. The Debtor refiled the corrected plan on October 2, 2014.

2

On October 7, 2014, the day before the hearing, the Debtor filed an amended plan and disclosure statement, as well as two new unsecured proofs of claim. The most notable change relevant to this plan is the change to Class 3. Class 3 was redefined to drop the claim of the maintenance companies and add the two new claims. The first claim is the claim of Patricia Berry for executive compensation totaling $6,250 ("the Berry claim"). The plan proposes to pay this claim with interest over 60 months in payments of $115.10 per month. The second claim is a class claim on behalf of the current employees of Edgefield Inn for Christmas bonuses accrued from January 1, 2014 through the filing of the petition ("the Employees claim"). The total claim is $363.84. The plan proposes to pay this claim with interest over a period of 60 months in payments of $6.70 per month.

The Court held a hearing on the motion to dismiss October 8, 2014. In support of its argument, Scarlet Portfolio provided the Court with testimony from an asset manager from Sabal Financial Group, L.P, the company servicing Scarlet Portfolio's debt. The manager generally established the debt and testified that the Debtor's financial statements show unexplained transfers between the Debtor and two other businesses owned by Rainsford. He also testified that, in his experience, Edgefield Inn has an unusually high number of employees for its size; overspends on breakfast; and lacks enough funds in reserve to keep the Inn's rooms and furnishings properly maintained. He concluded on these facts that Edgefield Inn would have problems successfully reorganizing.

The Debtor presented testimony from its owner, Bettis Rainsford. Rainsford testified that the Debtor had been making payments on its debt owned by Scarlet Portfolio since 1997 and had only recently experienced cash flow problems. He testified that the Debtor filed for bankruptcy because it was unable to renegotiate the terms of its loan and was facing foreclosure. He asserted

that Edgefield Inn is well-maintained and currently experiencing full or close to full occupancy. He also said he believes that the Inn is positioned to do well in the future because of a new outdoor sporting and recreation development under construction in Edgefield.

Patricia Berry also testified. Berry is the general manager of Edgefield Inn. She was hired in May of 2012. She testified that she was unhappy with the salary she was initially offered but accepted employment anyway because Rainsford committed to increasing her yearly salary from $25,000 to $40,000 over time if the occupancy of the Inn improved. After completing her first year of employment, Berry asked Rainsford for a raise. Rainsford told her that the business could not afford to pay her more at that time because it was having financial problems. She revisited this conversation with him later in July of 2014 and he agreed to give her a raise.[3] Berry was aware that Edgefield Inn was in bankruptcy, and saw the "debtor in possession" designation on the Edgefield Inn checks, but when she was told the business was doing fine she did not inquire further. Berry and Rainsford did not have a conversation about filing a proof of claim in this case until shortly before the hearing.

Berry also testified regarding the Employees claim, which she drafted. She stated that the employees have received Christmas bonuses every year and are worried they will not receive Christmas bonuses for the time they worked in 2014 prior to the filing of the bankruptcy. She stated the employees asked her to file a proof of claim on their behalf. She also did not discuss the filing of this claim with the Debtor until shortly before the hearing.

Berry reiterated Rainsford's assertion that the Inn is doing well. She stated they were nearly sold out on the evening of the hearing and were sold out through the following weekend.

---

[3] In the affidavit attached to her proof of claim, Berry states that she believes she is entitled to additional compensation starting May 2013 based on the conversation she and Rainsford had when she was hired. Although Rainsford testified that he does not dispute her proof of claim, he also did not state that the raise he approved in July of 2014 was retroactive from May of 2013.

4

## II.   Discussion

Before directly addressing the merits of the arguments, it is necessary to examine the structure of the Bankruptcy Code and the importance of claims classification and impairment on the plan confirmation process.

Section 1123(a)(1) of the Bankruptcy Code requires debtors proposing bankruptcy plans to classify their creditors' claims. Claims may be placed together in a class if such claims are "substantially similar." 11 U.S.C. § 1122(a). Once the claims are classified, each class is designated as impaired or not impaired. 11 U.S.C. § 1123(a)(2). The Code deems all classes impaired unless the plan "leaves unaltered the legal, equitable, and contractual rights" of the claims in the class, subject to certain exceptions not relevant here. 11 U.S.C. § 1124(a)(1). Each claim in a class must, absent consent, be treated the same. 11 U.S.C. § 1123(a)(4). Classified claimants have the right to vote on whether the plan can be confirmed, giving them a say in whether the debtor will be able to reorganize. *See* 11 U.S.C. § 1126. A class accepts the plan if non-insider creditors holding claims "at least two-thirds in amount and more than one-half in number of the allowed claims of such a class … that have accepted or rejected (the) plan" vote to accept the plan. 11 U.S.C. § 1126(c). This rule applies only to impaired classes: unimpaired classes are "conclusively presumed to have accepted the plan" and thus have no vote in the reorganization process. 11 U.S.C § 1126(f).

The result of the voting of the classes determines whether and how a plan is confirmed. For the plan to be confirmed, a court must find that classes either accept the plan or are not impaired. 11 U.S.C. § 1129(a)(8). If a class is both impaired and rejects the plan, the debtor must then satisfy the "cram down" confirmation requirements. 11 U.S.C. § 1129(b). However, before a

5

court may consider whether the debtor can satisfy the cram down requirements, it must first find that the plan meets all of the requirements of § 1129(a) excepting subsection (8). 11 U.S.C. § 1129(b). This means that the debtor must satisfy § 1129(a)(10), which requires "at least one class of claims that is impaired under the plan" to accept the plan "without including any acceptance of the plan by any insider."

Consequently, for a court to confirm a plan, regardless of whether confirmation is consensual or crammed down, the debtor must satisfy the minimum threshold requirement of having one non-insider, impaired class accept the plan. It is with this understanding in mind that the Court examines the parties' arguments.

**A. Whether The Debtor Can Create An Impaired, Consenting Class**

Scarlet Portfolio argues that the Debtor cannot propose a confirmable plan because there is no conceivable plan that will have an impaired consenting class. In order to evaluate Scarlet Portfolio's argument, the Court must consider three things. First, what classification of claims is permissible. Second, what classes are impaired. Third, whether out of those impaired classes, it would be possible for the Debtor to solicit a class' favorable vote.

The claims in this case consist of the secured and any potentially unsecured portions of the Scarlet Portfolio and IRS claims; the unsecured insider claim of Rainsford; the secured claim of Edgefield County; and the unsecured late-filed claims of Berry and the Employees. The Debtor has classified the IRS and Scarlet Portfolio claims together in Classes 1 and 2. The parties do not dispute that these classes are impaired. Scarlet Portfolio has informed the Court that it will not consent to the plan. Because Scarlet Portfolio is the holder of well over two-thirds in amount of the claims in Class 1, and presumably would be similarly situated in Class 2 if there is an

unsecured deficiency, these impaired classes will not be consenting.[4] Additionally, Rainford's claim, because it is an undisputed insider claim, also cannot be a consenting class. 11 U.S.C. § 1126(e).[5]

Turning to the remaining claims: the secured tax claim of Edgefield County cannot be a member of a voting class because it receives treatment under § 1129(a)(9)(D). *See Travelers Ins. Co. v. Bryson Properties (In re Bryson Properties)*, 961 F.2d 496, 501 n.8 (4th Cir. 1992). This is true regardless of the tax's secured status because tax claims receiving preferential treatment under § 1129(a)(9) cannot be impaired. *See id.*; *contra In re Mangia Pizza Investments, LP*, 480 B.R. 669, 677 – 679 (Bankr. W.D. Tex. 2012) (holding that tax claims are necessarily impaired but cannot be part of an impaired class because they are not subject to classification). This means the only potentially impaired consenting class would consist of the Berry and Employees claims.

Importantly, these two claims were neither scheduled and nor filed prior to the claims bar date of July 28, 2014. In chapter 11 proceedings, claims are deemed filed if they are scheduled. 11 U.S.C. § 1111(a). If a claim is not scheduled, or if a creditor disputes the claim, the creditor must file a claim before the claims bar date. Fed. R. Bankr. P. 3003(c)(2). The court may extend this deadline at the request of parties for cause prior to the expiration of the time period. Fed. R. Bankr. P. 3003(c)(3); 9006(b)(1). If the time is not extended prior to the deadline, a party may request the court to permit it to file a claim out of time upon a showing of excusable neglect. Fed. R. Bankr. P. 9006(b)(1); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 382 (1993). Claims not filed by the claims bar date are disallowed on the objection of a party in

---

[4] Because this finding means that neither class can consent, the Court need not consider whether the votes would satisfy § 1126(c)'s numerosity requirement. The Court also need not consider whether the classification of these two claims together is appropriate, or whether the IRS claim should be classified as some sort of priority claim given that it is stems from the Debtor's 2012 and 2013 tax liability. Nor need the Court opine on whether secured claims can ever be so similar as to be combined in a class.

[5] Class 5 is the equity class and its treatment is not discussed in this order.

7

interest, 11 U.S.C. § 502(b)(9), and a party filing a claim late "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed. R. Bankr. P. 3003(c)(2). In summary, creditors that file claims late generally cannot participate in the plan confirmation process.

The parties here did not request an extension of the claims bar date prior to the deadline. Although both Berry and the Debtor orally requested that the Court allow the late filings at the hearing, neither filed a motion to put this request properly before the Court and neither provided evidence at the hearing supporting the request. The facts before the Court are that the claims were filed two and a half months after the claims bar date and Berry knew the Debtor was in bankruptcy. Based on those facts, the Court cannot, at this time, determine that the Debtor or Berry would satisfy the excusable neglect standard that would permit the late filing. The Court does find, however, that at the time of the hearing the claims were not allowed under § 502(b)(9) because they were filed late. In addition, pursuant to Rule 3003(c)(2), Berry and the Employees cannot be treated as creditors for the purpose of voting on the plan. Because they did not file their claims prior to the bar date, they forfeited their right to participate in this reorganization.[6]

The Rainsford insider class cannot vote. The unclassified Edgefield County claim cannot vote. The Berry and Employees claims cannot vote. Scarlet Portfolio, whose vote controls both Classes 1 and 2, has indicated it will reject the plan. Thus, due to the nature of the claims in this case, there is no plan the Debtor can propose that would permit the Court to confirm the plan. Because the Debtor cannot file a confirmable plan, the case must be dismissed.

---

[6] The Court makes no finding as to whether these claims, if allowed despite being untimely, would be allowed as enforceable claims for wages under state law, *see* 11 U.S.C. § 502(b)(1); bonuses entitled to priority as additional compensation for work performed, 4 Collier on Bankruptcy ¶ 507.06[2] (Alan Resnick & Henry J. Sommer eds., 16th ed.); pre- or post-petition wages; *see* 11 U.S.C. § 507(a)(4)(A) and (a)(2); or whether Berry has a right or standing to prosecute a claim on behalf of other employees. The Court will also not consider how the claims the Debtor earlier classified as Class 3 claims would be analyzed given that there are no facts related to those claims before the Court.

**B. Prejudice Is Not Warranted**

Scarlet Portfolio asks this Court to dismiss this case with prejudice because the Debtor filed in bad faith and acted in bad faith. Scarlet Portfolio points primarily to three main facts in support of its argument: that the Debtor filed on the eve of foreclosure; that it cannot file a confirmable a plan; and that it allegedly made improper pre-petition transfers to insiders that it did not intend to pursue.

Dismissal of a bankruptcy case is ordinarily without prejudice to the filing of a subsequent case. *See* 11 U.S.C. § 349(a). The Fourth Circuit has recognized that bankruptcy cases can be dismissed with prejudice barring re-filing when there is evidence of bad faith. *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 937 (4th Cir. 1997). In order to find that a petition is filed in bad faith, the Court must find the petition was filed with "objective futility" and "subjective bad faith." *In re Premier Automotive Services, Inc.*, 492 F.3d 274, 279 – 80 (4th Cir. 2007). The objective futility test asks whether the debtor has a "'realistic possibility of an effective reorganization.'" *Premier Automotive*, 492 F.3d at 280. The subjective bad faith test requires a court to examine the motivation of the debtor and determine whether it is making an honest attempt to reorganize or "is instead motivated by some improper purpose." *Id*. The overall purpose of the bad faith inquiry is to prevent abuse of the bankruptcy process by debtors whose sole motivation is to avoid paying their creditors without repercussion. *Premier Automotive*, 492 F.3d at 279. When considering whether to dismiss a case with prejudice, the court must find the bad faith amounts to some "egregious behavior" that prejudices creditors. *Tomlin*, 105 F.3d ay 937.

The Court finds no such bad faith here. The Debtor has proposed its plan. Rainsford testified credibly that his purpose is to restructure the business' debt and he believes the business is

9

improving sufficiently to reorganize thanks to the new recreational development in Edgefield. Debtor's counsel admits he is not a regular bankruptcy practitioner. He may have made strategic mistakes with the timing of the filing and the need for creditor votes and participation. There is no evidence of a calculated attempt by the Debtor to avoid its obligations or abuse the Bankruptcy Code. As to the alleged payments to insiders, the Court believes, based on the testimony of Rainsford, that these payments also were not part of a plot by the Debtor to shirk its duties, but rather an effort to keep the several businesses afloat. This is the first petition filed by the Debtor. There appears to be some small equity in the property. Based on these facts, the Court cannot find bad faith and therefore denies Scarlet Portfolio's request for a bar to refiling.

### III.    Conclusion

The case is dismissed. Dismissal is without prejudice.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**10/31/2014**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 10/31/2014